# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                Plaintiff,

v.

ADONI P. TONIOLO,

                Defendant.

Case No. 12-CR-204-JPS

ORDER

On January 14, 2013, United States Magistrate Judge Nancy Joseph issued a recommendation (Docket #139) that this court deny in part and grant in part defendant Adoni P. Toniolo's ("Toniolo") motion to suppress (Docket #117). Toniolo has filed an objection to Magistrate Joseph's recommendation. While Toniolo's original motion to suppress argued both that the search warrant does not set forth probable cause and that specific items seized during the execution of the search must be excluded, his objection to Magistrate Joseph's recommendation is limited to her finding that probable cause supports the warrant. After careful consideration, the court concludes that the affidavit supporting the warrant establishes probable cause. The court, therefore, adopts Magistrate Joseph's recommendation in its entirety.[1]

1.     Facts

    1.1     Issuance of the Search Warrant

On September 14, 2012, an affidavit of Detective David L. Baker was filed in the District Court for the Eastern District of Wisconsin. (Docket #1).

---

[1]The court may adopt the portions of Magistrate Joseph's recommendation to which neither party objected without *de novo* analysis. *See* 28 U.S.C. § 636(b)(1); *United States v. Molinaro*, 683 F. Supp. 205, 211 (E.D. Wis. 1988).

Detective Baker, a 27-year veteran employed by the Milwaukee Police Department, was, at all times material, assigned to the Federal Bureau of Investigation's High Intensity Drug Trafficking Area Drug Gang Task Force in Milwaukee. Affidavit at ¶ 1. In the affidavit, Detective Baker alleges that Toniolo and twelve others committed several felony offenses, including, but not limited to, violations of: 21 U.S.C. § 841(a)(1), possession with the intent to distribute and distribute controlled substances; 21 U.S.C. § 846, conspiracy to possess with the intent to distribute and distribute controlled substances; 21 U.S.C. § 843(b), use of communications facilities to facilitate controlled substance felonies; 18 U.S.C. § 1952, interstate travel or transportation in aid of racketeering enterprises; and 18 U.S.C. § 1956 and 1957, money laundering. Affidavit at ¶ 3. Detective Baker offered his affidavit to support a finding of probable cause to search one place of business and twelve residences, including Toniolo's. Affidavit at ¶ 4.

Broadly described, the affidavit provides information about an investigation into a marijuana trafficking organization ("MTO"), which he alleges is responsible for distributing hundreds of pounds of high-grade marijuana in Wisconsin. Affidavit at ¶ 7. The affidavit provides the following brief overview of the MTO's supply chain:

> As indicated below, the investigation to date has determined that Antonio Crayton and Haley Wagner obtain approximately 100 pounds of marijuana from locations in Northern California on an almost monthly basis. The marijuana is transported from Northern California to [the] Eastern District of Wisconsin by private or rental vehicles, usually driven by Haley Wagner. Once the marijuana arrives in the Manitowoc area, the marijuana is stored at Elizabeth Wagner's residence in Francis Creek, Wisconsin. Soon after its arrival in Wisconsin, the marijuana is distributed by Haley Wagner in multiple pound

> increments to several distributors in Manitowoc, Calumet, Sheboygan, and Milwaukee Counties, including Joshua Resch, Roger Burt, Joseph Smith, Jason Wiehr and Preston Stephens. These distributors, in turn, distribute the marijuana in smaller amounts to several individuals, including Daniel Woelfel, Jason Gunderson, Leah Truettner, and Adoni Toniolo.

Affidavit at ¶ 7. The affidavit alleges the following supply chain: Haley Wagner ("Haley"[2]) supplied Joshua Resch ("Resch"), who supplied Jason Wiehr ("Wiehr"), who, in turn, supplied Toniolo.

The affidavit describes that Haley traveled out of state three times to acquire marijuana: April 2012, June 2012, July 2012. Affidavit at ¶¶ 22-29, 43-47, 54-65. Upon returning to Wisconsin, Haley made contact with Resch. Affidavit at ¶ 32-33, 48. On one of those occasions, agents observed Haley drive to Resch's house and pull into his garage. Affidavit at ¶ 48. Though the garage door closed behind her, agents were able to observe, through an open side door, that Haley retrieved two large duffle bags, believed to contain large amounts of marijuana, from the trunk of her car. Affidavit at ¶ 48. The affidavit also provides information linking Resch to Wiehr. The affidavit indicates that Resch and Wiehr were handling large quantities of marijuana; it describes, for example, text messages between Resch and Wiehr in which they discuss 10-pound increments, and also 20-pound increments for $70,000.00. Affidavit at ¶ 87. Agents also observed Wiehr traveling from Resch's home to his own, and exiting his vehicle carrying a full backpack and duffle bag. Affidavit at ¶ 94. On one instance in January 2012, Wiehr visited Resch's residence for 17 minutes. Affidavit at ¶ 83. On that occasion, Wiehr went from Resch's to his own residence, retrieved what appeared to be rolled

---

[2]Subsequent references to Haley Wagner will use her first name, Haley, to distinguish her from her sister, Elizabeth Wagner, who is also a defendant.

up plastic, and then continued to his parent's house in Glenbeulah, Wisconsin. Affidavit at ¶ 83. The affidavit describes case agents' theory that Wiehr obtains marijuana from Resch and stores it at his parent's house. Affidavit at ¶ 83.

This theory is consistent with Wiehr's text messages to Toniolo, obtained with a court order, in which Wiehr and Toniolo arrange delayed meetings, and Wiehr explains that he has to "pick it up" or "run and grab it" before meeting, and then is observed traveling to his parent's residence before meeting Toniolo. Affidavit at ¶ 84, 86. The affidavit further describes several occasions in which Toniolo made brief visits to Wiehr's house, each time leaving carrying a backpack that agents described, on two of the occasions, as "full" or "fuller" than when he arrived. Affidavit at ¶¶ 53, 88, 89, 91. After those interactions, in August of 2012, Toniolo moved into his mother's apartment, located at 418 Appleton Street, Unit B, in Plymouth, Wisconsin. Affidavit at ¶¶ 104-05. Toniolo was observed moving boxes into the new apartment, and provided the new address to the police when he was pulled over for a traffic violation on August 3, 2012. Affidavit at ¶¶ 104-05. On August 8, 2012, the affidavit describes the following:

> At approximately 8:05am [sic], case agents observed that Wiehr had left his residence in his 2006 Cadillac CTS, bearing WI plate 545-PER. Case agents observed Wiehr arrive at Toniolo's residence in his vehicle. After arriving at Toniolo's residence, case agents observed Toniolo exit his residence and enter into the passenger side front seat of Wiehr's vehicle for approximately 30 seconds later [sic], and exited the vehicle. Case agents were able to visually identify the male subject as Adoni Toniolo. Toniolo was wearing a black tee shirt and a light blue pair of running type shorts. Case agents were able to observe that Toniolo did have a large bulge in the left leg area of his shorts. Adoni was walking with both hands holding an

> item which appeared to be a large bulge in his shorts. Toniolo then went back inside of the apartment building, where he resides. Based on this activity, case agents believe through their training and experience as well as the investigation into these individuals that a drug deal took place for a substantial amount of marijuana and Toniolo brought the marijuana inside of 418 Appleton St.

Affidavit at ¶ 108. Detective Baker executed the affidavit on September 14, 2012; Magistrate Joseph issued the search and seizure warrant that same day. Docket #1; Case 12-MJ-949, Docket #2.

### 1.2 Execution of the Search Warrant

Detective Lance Dassler and Deputy Tyler Wustenhagen were among the officers who executed the search warrant on the evening of September 14, 2012. The inventory filed with the court following the execution of the warrant, bearing both officers' signatures, reflects the seizure of the following items: four cellular phones; an address book; a 1987 Cadillac; a box, a wallet, and a bank pouch, each containing currency; drug paraphernalia, glassware, ziploc baggies, and heat seal baggies; a switchblade; and eight guns, along with several magazines, ammunition, and a sight. 12-MJ-949 (Docket #2) at 7. These items were seized from the apartment, the basement, or from Toniolo's person.

On September 25, 2012, a federal grand jury returned a 27-count indictment against Toniolo and ten other defendants. Docket #61. Toniolo is charged in six of the 27 counts with: four counts of possession with intent to distribute marijuana; one count of possession of a firearm in furtherance of a drug trafficking offense; and one count of being an unlawful user of a controlled substance in possession of a firearm. Indictment at 8, 17, 18, 21, 27,

and 28. Toniolo entered a not guilty plea as to all counts before Magistrate Joseph on September 26, 2012. Docket #69.

Toniolo's motion to suppress argued that Detective Baker's affidavit did not establish probable cause to search Toniolo's residence. It also sought to exclude the glassware seized from his bedroom, and the magazines and ammunition seized from the basement. Magistrate Joseph recommends that the court grant Toniolo's motion to suppress the magazines and ammunition from the basement, and she recommends that the motion be denied to the extent that it argues that the affidavit does not establish probable cause, and on the issue of suppressing the glassware. Docket #139. Toniolo objected to Magistrate Joseph's recommendation, on the limited finding that the affidavit established probable cause. Objection (Docket #142) at 1.

2. Analysis

Toniolo asserts that the affidavit supporting the warrant does not set forth probable cause to believe that evidence would be found in Toniolo's residence. Objection at 1. Toniolo's argument proceeds on two bases: first, that the affidavit was insufficient to show probable cause that Toniolo was distributing drugs; second, that there was no nexus to Toniolo's apartment sufficient to support probable cause that a search would lead to evidence of drug distribution. Objection at 3, 4.

Where, as here, a judge issues a search warrant based solely on an affidavit, "the validity of the warrant rests solely on the strength of the affidavit." *United States v. Peck*, 317 F.3d 754, 755-56 (7th Cir. 2003). A search warrant must "set[] forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime," considering the totality of the circumstances. *Id.* (*citing Illinois v. Gates*, 462 U.S. 213, 238

(1983)). This court must give "great deference" to the magistrate's resolution "on the mixed question whether the facts add up to 'probable cause' under the right legal standard." *United States v. McIntire*, 516 F.3d 576, 578 (7th Cir. 2008) (*quoting Gates*, 462 U.S. 213, 236). Even "doubtful cases are to be resolved in favor of upholding the warrant." *United States v. Sleet*, 54 F.3d 303, 306 (7th Cir. 1995) (*quoting United States v. Pless*, 982 F.2d 1118, 1124 (7th Cir. 1992)).

As to Toniolo's first argument that the affidavit is insufficient, Toniolo asserts that the facts alleged in the affidavit do not support a conclusion that Toniolo actually distributed drugs, or conspired to distribute drugs. Objection at 3; Motion to Suppress at 3. Magistrate Joseph, in assessing this argument, considered the entirety of the record as set forth in the affidavit. She noted that Wiehr was the subject of five controlled buys over three months, and that each time Wiehr supplied distribution quantities: a quarter pound of marijuana, sold for between $1,100.00 and $1,200.00. Recommendation at 12. That is, the affidavit showed that Toniolo's supplier sold distribution quantities, at least in some instances. Specifically with regard to Toniolo, Magistrate Joseph laid out the pattern contacts between Toniolo and Wiehr. Recommendation at 13-14. She recounted the several observed visits, the pattern of which is that Toniolo visits Wiehr for a very short amount of time, carrying a backpack. On some occasions, this visit occurred after Wiehr texted Toniolo that he had to "pick it up first." At least two of those short visits occurred on days where Wiehr allegedly purchased marijuana from his supplier: on March 6, 2012, Wiehr and Resch texted about purchasing 20 pounds of marijuana for $70,000.00, and on June 13, 2012, Wiehr was observed leaving Resch's with a large duffel bag. Wiehr then

made contact with Toniolo following his contacts with Resch. On some of those occasions, the case agents specifically noted that Toniolo's backpack was "full" and "fuller" than when Toniolo arrived. Additionally, the events of August 8, 2012, provided more corroboration for the theory that Toniolo was involved in the distribution of marijuana. That day, agents saw him get into Wiehr's car and then exit 30 seconds later with what agents described as a "large bulge" in his shorts. The bulge was so large that Toniolo used both hands to hold it in place as he walked back into his apartment. From that event, case agents, utilizing their training and experience, concluded that they had likely witnessed a drug deal for a "substantial amount" of marijuana. From these facts, Magistrate Joseph concluded that probable cause existed to search Toniolo's apartment. Recommendation at 14.

Toniolo objects to Magistrate Joseph's reliance on allegations surrounding Wiehr in assessing the probable cause as it relates to Toniolo. Objection at 4. First, it is important to note that while Magistrate Joseph inferred that Toniolo received distribution quantities from the evidence that Wiehr supplied distribution quantities in controlled buys, there is also evidence specific to Toniolo indicating that he also received substantial quantities of marijuana from Wiehr: on August 8, 2012, agents observed Toniolo meeting Wiehr in Wiehr's car, and concluded from their observations that Toniolo had purchased a substantial amount of marijuana. Second, determining whether probable cause exists requires the magistrate to consider the totality of the circumstances, *Peck*, 317 F.3d at 755-56, and to make a "practical, common-sense decision whether, given all the circumstances set forth…, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462

U.S. 213, 238 (1983). "As in many evidentiary questions, the whole of a probable cause showing often is greater than the sum of its parts. Even seemingly innocent behavior might arouse suspicion in light of other circumstances." *United States v. Pace*, 898 F.2d 1218 (7th Cir. 1990) (*citing Gates* at 243-44 n.18). Which is to say, Toniolo's observed actions may not be individually sufficient to establish probable cause, but taken together in the context of all the circumstances, they establish probable cause to issue the warrant. The court agrees with Magistrate Joseph's conclusion that the affidavit set forth probable cause to issue the search warrant.

Toniolo also asserts that there are no facts alleged indicating the presence of evidence at his apartment. Objection at 4; Motion to Suppress at 5-6. His objection is two-fold: first, that the affidavit does not adequately connect Toniolo's residence to the alleged unlawful activity; and second, that the affidavit's information is stale and Magistrate Joseph applied the concept of "ongoing criminal activity" too broadly to overcome the staleness. Objection at 6-8. The court disagrees with each of Toniolo's arguments.

First, with regard to the nexus to Toniolo's residence, the affidavit establishes that Toniolo went directly to his home in each instance that agents followed Toniolo after he left Wiehr's home. Affidavit at ¶¶ 53, 88, 89. Then, of course, on August 8, 2012, Wiehr met Toniolo in the driveway of Toniolo's residence; after meeting for 30 seconds, Toniolo returned to his residence with what was believed to be a substantial amount of marijuana hidden under his shorts. Affidavit at ¶ 108. The court thus disagrees with Toniolo's characterization that the recommendation rests on a disfavored categorical rule that a drug dealer's home can always be searched. Objection at 7 (citing *United States v. Wiley*, 475 F.3d 908, 916 (7th Cir. 2007)). The affidavit contains

several instances showing a pattern that Toniolo left the home of Jason Wiehr, a person believed to distribute large quantities of marijuana, and then went directly to his residence. Additionally, this pattern of activity occurred in the months directly preceding the warrant application.[3] Based on that information, it was reasonable to believe that evidence of illegal activity could be found in Toniolo's residence.

On Toniolo's second argument that the affidavit's information is stale, the court is unpersuaded. Toniolo argues rather succinctly that ongoing criminal activity "doesn't mean everything that occurred more than once," nor does it "encompass[] sporadic behavior like that outlined in the affidavit." Objection at 9. The court disagrees with the characterization of Toniolo's activity as "sporadic." Rather, the events show one or two contacts with Wiehr each month from February to August, 2012. This pattern of contacts establishes an ongoing activity, and makes particular sense considering the totality of the circumstances, because the larger marijuana trafficking scheme describes trips from Wisconsin to the west coast approximately monthly to purchase the marijuana.

On September 14, 2012, Magistrate Joseph received the 108-page affidavit for this case. Her task was to make a "practical, common-sense decision whether, given all the circumstances set forth…, there is a fair probability that contraband or evidence of a crime will be found in a

---

[3] *Contrast Wiley*, where an informant relayed he had seen the defendant cook cocaine into crack at his home, but the affidavit did not provide a date for that activity. 475 F.3d at 911. Toniolo cites Judge Williams's concurring opinion wherein the Judge astutely observed that such information provides little probative value because the observation might have been several years old, in which case it "could hardly predict whether contraband would be found on the premises on the day of the search." *Id.* at 920 (Williams, J., concurring).

particular place." *Gates*, 462 U.S. at 238. Considering the entire record before Magistrate Joseph, the court can only conclude that "[a] sensible judge could find that this adds up to probable cause." *McIntire*, 516 F.3d at 579. Magistrate Joseph's recommendation will, therefore, be adopted in its entirety.

Accordingly,

IT IS ORDERED that the January 14, 2013 recommendation of Magistrate Judge Nancy Joseph (Docket #139) that defendant Adoni Toniolo's motion to suppress (Docket #117) be denied in part and granted in part be and the same is hereby ADOPTED; and

IT IS FURTHER ORDERED that defendant Adoni Toniolo's motion to suppress (Docket #117) be and the same is hereby DENIED in part and GRANTED in part.

Dated at Milwaukee, Wisconsin, this 8th day of February, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge